STATE v. LEROY MASSEY.

(Filed 22 May 1968.)

**1. Larceny § 3—**

The common law distinctions between petit and grand larceny have been abolished by G.S. 14-70.

**2. Same—**

The larceny of property of the value of $200 or less is a misdemeanor, G.S. 14-72, but larceny from the person is a felony without regard to the value of the property stolen and is punishable for as much as ten years in the State's prison. G.S. 14-1, G.S. 14-2, G.S. 14-3.

**3. Criminal Law § 4; Constitutional Law § 28—**

The common law rule that an attempt to commit a felony is a misdemeanor remains unchanged in this State unless otherwise provided by statute, and an indictment will not support a conviction for an offense more serious than that charged.

**4. Larceny § 8—**

Trial court's instruction on the offense of larceny from the person in that the taking was "from the prosecuting witness" *is held* sufficient in this case, since the phrase "from the person" is self-explanatory and needs no additional definition.

**5. Criminal Law § 103—**

An instruction of the court submitting to the jury the issue of defendant's guilt of common-law robbery or of the lesser offense of larceny from the person, the maximum punishment for either offense being the same, is not prejudicial to the defendant on the ground that the jury might be misled as to the severity of the penalty imposed upon conviction, since the province and responsibility of the jury is to find the facts while the consequences of the verdict is solely for the court.

**6. Criminal Law § 132—**

A motion to set aside the verdict as being contrary to the evidence is addressed to the sound discretion of the trial judge, whose ruling is not reviewable on appeal in the absence of manifest abuse of discretion.

STATE *v.* MASSEY.

APPEAL by defendant from *Clarkson, J.,* 10 July 1967 Criminal Session of MECKLENBURG.

Defendant was indicted for the crime of robbery with firearms from the person of Floyd Walton. Defendant entered a plea of not guilty.

Material portions of the State's evidence may be summarized as follows:

The prosecuting witness, Floyd Walton, testified that in the early morning of 29 May 1967 he encountered defendant on West Trade Street in Charlotte and they went to a house on West Fifth Street, where they obtained some liquor. They left the house about twenty minutes later and walked through a field behind an A & P Store. Defendant there told Walton to give him his money and when Walton replied that he had no money, defendant grabbed him by the shirt, causing Walton's billfold to fall to the ground from within his shirt. Defendant picked up the billfold and placed it in his pocket. Walton testified that he saw something in defendant's hand but he was unable to say whether or not it was a gun, and that he did not pick up his billfold because defendant told him he would be killed if he "move or holler." Defendant then directed Walton to walk away. Walton located a police car and told the officers that he had been robbed. He then rode with the police officers to the house where he had earlier obtained liquor and there identified the defendant. The police officers placed defendant in custody of officers Bruce Tread-eway and H. R. Smith, who took defendant and Walton to the rear of the A & P Store, where they found in a Dempster Dumpster papers which had been in Walton's billfold. The pocket book was identified by Walton and introduced as State's Exhibit 1.

W. J. Cosner of the Police Department testified and in substance corroborated the testimony of the prosecuting witness. He also testified that defendant denied robbing anyone.

Police Officer Bruce Treadeway testified that on the morning of 29 May 1967, at about 7:15, he advised defendant that he was under arrest for commission of a felony, and at that time advised him of his constitutional rights. Defendant thereupon denied robbing Walton. Defendant and Walton then had a conversation which resulted in Officers Smith and Treadeway, defendant and Walton, returning to the lot behind the A & P Store, where Walton identified papers found in a Dempster Dumpster, as having been in his billfold when it was taken from him. After their return to the detective bureau about 8:10 A.M., defendant stated that he had placed the billfold behind the back seat of the police car in which he rode to the police station that morning.

Officer Dwight Jordan of the Charlotte Police Department testified that he came on duty at about 6:55 A.M. on 29 May 1967, and at about 8:30 or 9:00 o'clock on that morning he found a black billfold, identified as State's Exhibit 1, in the back seat of the patrol car.

Defendant, testifying in his own behalf, stated inter alia, that he had been with Walton on the morning in question, but denied that he had left the house on West Fifth Street with Walton or that he robbed him. He testified that Walton and an unidentified person went through the field toward the rear of the A & P Store and that he observed the unidentified person knock Walton down and run. He saw this unidentified person throw something into a Dempster Dumpster as he ran past it. Defendant further testified that the billfold was already in the patrol car when he entered it.

The jury returned a verdict of guilty of larceny from the person. The court imposed sentence confining defendant to State's Prison for a term of not less than three nor more than five years. Defendant appealed.

*Attorney General Bruton and Deputy Attorney General Bullock for the State.*
*John H. Cutter for defendant.*

BRANCH, J. The principal question presented by this appeal is: Did the court err in failing to charge the jury as to the elements constituting larceny from the person?

Defendant was tried on a bill of indictment which charged:

". . . That Leroy Massey late of the County of Mecklenburg on the 29th day of May, 1967, with force and arms, at and in the County aforesaid, unlawfully, willfully, and feloniously having in his possession and with the use and threatened use of firearms, and other dangerous weapons, implements, and means, to wit: a pistol whereby the life of Floyd Walton was endangered and threatened, did then and there unlawfully, wilfully, forcibly, violently and feloniously take, rob, steal and carry away $23.00 in lawful money of the United States, personal papers and a billfold the property of Floyd Walton on the value of less than $200.00 to wit: $48.00 from the presence, person, place of business, and residence of Lloyd Walton, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State."

The trial judge, in charging the jury, defined larceny as "the tak-

ing and carrying away from any place at any time of the personal property of another without his consent by a person not entitled to the possession thereof, feloniously with intent to deprive the owner of his property permanently, and to convert it to the use of the taker." And in further explanation and application of the elements involved in larceny, the court stated:

"So, to warrant the conviction of the defendant upon the charge of larceny, the State must prove beyond a reasonable doubt, from the evidence in this case, first, that at the time named in the indictment the prosecuting witness owned or possessed the personal property mentioned in the indictment; second, that the defendant knowingly took such personal property from the possession of the owner, the prosecuting witness, into his own possession and carried it away; and, third, that such taking and carrying away of such property by the defendant was by a trespass, that is, was against the will of the prosecuting witness, or at least without his consent; and, fourth, that such taking and carrying away of such property by the defendant was without any claim or pretence of right on the part of the defendant, and was with a then existing felonious intent on the part of the defendant wholly and permanently to deprive the prosecuting witness of his property to appropriate or convert the same to his, the defendant's, own use."

At common law the stealing of property of any value was a felony, and both grand larceny and petit larceny were felonies. *State v. Andrews,* 246 N.C. 561, 99 S.E. 2d 745. The common law distinctions between petit and grand larceny have been abolished by the ancient statute now codified as G.S. 14-70.

G.S. 14-72 provides:

"The larceny of property, or the receiving of stolen goods knowing them to be stolen, of the value of not more than two hundred dollars, is hereby declared a misdemeanor, and the punishment therefor shall be in the discretion of the court. If the larceny is from the person, or from the dwelling or any storehouse, shop, warehouse, banking house, counting house, or other building where any merchandise, chattel, money, valuable security or other personal property shall be, by breaking and entering, this section shall have no application. In all cases of doubt the jury shall, in the verdict, fix the value of the property stolen."

Under the provisions of G.S. 14-72 as amended, the larceny of property of the value of $200 or less is a misdemeanor. It is provided

in the statute that the statute does not apply when "the larceny is from the person . . ." Thus, larceny from the person as at common law is a felony without regard to the value of the property stolen, and the punishment for larceny from the person may be for as much as ten years in State's prison. *State v. Brown*, 150 N.C. 867, 64 S.E. 775; *State v. Acrey*, 262 N.C. 90, 136 S.E. 2d 201; G.S. 14-1, 14-2, 14-3.

We find a full discussion of the statutory acts leading to the enactment of the present G.S. 14-72, together with an exhaustive discussion of cases interpreting the statute, by Bobbitt, J., speaking for the Court in the case of *State v. Cooper*, 256 N.C. 372, 124 S.E. 2d 91.

The Act of 1895, Chapter 285, entitled "An Act to limit the punishment in certain cases of larceny" provided in Section 1 that where the value of the property stolen did not exceed twenty dollars, the punishment for the first offense should not exceed imprisonment for a longer term than one year. This Act also contained a further proviso that "if the larceny is from the person, section one of the act shall have no application." The various amendments to this act (which are apparent from a cursory reading and comparison of the Act of 1895, Chapter 285, and G.S. 14-72) have not affected the crime of larceny from the person.

The definition here given by the trial judge contains all the elements necessary to constitute and accurately describe and explain the crime of larceny. *State v. Booker*, 250 N.C. 272, 108 S.E. 2d 426; *State v. Griffin*, 239 N.C. 41, 79 S.E. 2d 230; *State v. Cameron*, 223 N.C. 449, 27 S.E. 2d 81.

There are cases in North Carolina which seem to hold that in indictments for larceny or crimes which include larceny as a lesser included offense, it is not essential for the State to allege in the indictment that the taking was from the person in order to support a verdict and sentence for the crime of larceny from the person. These cases place the burden on defendant to show diminution of sentence under P.L. 1895, Chapter 285, or G.S. 14-72. *State v. Bynum*, 117 N.C. 749, 23 S.E. 218; *State v. Harris*, 119 N.C. 811, 26 S.E. 148. However, later cases hold that in order for the State to convict of the felony of larceny (except in those instances where G.S. 14-72 does not apply) the State must prove beyond a reasonable doubt that the property stolen had a value of more than $200.00. *State v. Cooper, supra; State v. Weinstein*, 224 N.C. 645, 31 S.E. 2d 920; *State v. Tessnear*, 254 N.C. 211, 118 S.E. 2d 393. Further, this Court has held that where an indictment charges larceny of $200.00 or less, but does not contain allegations that the larceny was from a building by breaking and entering, the punishment cannot exceed two years in

prison, even though all the evidence tends to show the larceny was accomplished by a felonious breaking and entering. *State v. Bowers,* 273 N.C. 652, 161 S.E. 2d 11.

G.S. 14-87 provides for more serious punishment for the commission of a robbery when such offense is committed or *attempted* with the "use or threatened use of any firearms or other dangerous weapon, or implement or means," than is provided for common law robbery. The statute does not attempt to change the offense of common law robbery or divide it into degrees. *State v. Chase,* 231 N.C. 589, 58 S.E. 2d 364. The common law rule that an attempt to commit a felony was a misdemeanor remains unchanged in this state, unless otherwise provided by statute, and an indictment will not support a conviction for an offense more serious than that charged. *State v. Hare,* 243 N.C. 262, 90 S.E. 2d 550. However, the indictment in the instant case is sufficient, since the bill of indictment alleged a consummated robbery with firearms and included the allegation that the property was stolen from the person of the prosecuting witness. *State v. Fowler,* 266 N.C. 667, 147 S.E. 2d 36.

The crimes of larceny and larceny from the person are defined in the case of *State v. Braxton,* 230 N.C. 312, 52 S.E. 2d 895, as follows:

> ". . . 'the felonious or criminal taking and carrying away of the personal property of another by force and against the will of the owner and taking and carrying it away with the then present intent on the part of the one who takes it to appropriate it to his own use for all time and to deprive the rightful owner of its use, and when that taking is from the person of one then it becomes larceny from the person.' . . ."

Black's Law Dictionary, 4th Edition, defines larceny from the person as "Act of taking property from the person by merely lifting it from the person or pocket."

Admittedly, the charge in the instant case is not a model charge on the crime of larceny from the person; however, the trial judge clearly instructed the jury that the issue of defendant's guilt on this charge was being submitted to them. Although the remainder of the charge was confined to instructions correctly given on larceny and common law robbery, the trial judge referred to the taking as "from the prosecuting witness, Floyd Walton." The jury could hardly have failed to understand what is meant by the expression "from the person." It is self-explanatory and needs no additional definition. There is no point in explaining the obvious. Moreover, if the charge be erroneous, it must be because of the omission of the

words showing the taking to be from the person. The verdict of the jury, "The jury finds the defendant guilty of larceny from the person," further tends to show that this jury obviously understood the charge and its relation to the evidence adduced at the trial.

The verdict was clearly supported by the allegations of the indictment and by the evidence presented at the trial. Defendant fails to show error in the charge affecting one of his substantial rights and that a new trial would probably result in a different verdict. *State v. Peacock,* 236 N.C. 137, 72 S.E. 2d 612; *State v. Birchfield,* 235 N.C. 410, 70 S.E. 2d 5; *State v. Bullins,* 226 N.C. 142, 36 S.E. 2d 915.

Defendant also assigns as error the court's failure to grant defendant's motion to set aside the jury verdict. In support of this assignment of error defendant advances the same arguments concerning the court's instructions which we have hereinabove discussed. He further contends that this assignment of error is tenable because of the single instruction of the trial court: ". . . so the case will be submitted to you on the issue of whether he's guilty of common law robbery or whether he's guilty of the lesser offense of larceny from a person." The defendant did not favor us with citation or argument in his brief as to this assignment of error. However, conceding for the purpose of argument, but without deciding that the crime of larceny from the person is not a lesser offense than that of common law robbery, defendant has failed to show prejudicial error in the court's instructions which would justify his motion to set aside the verdict. We assume that defendant is here contending that the jury was misled as to the quality of the criminal act or the severity of the penalty which might be imposed therefor.

Whether larceny from the person is a lesser offense than common law robbery as related to the punishment, was of no concern to the jury, since its province and responsibility was to find facts and return a verdict based thereon. The consequence of the verdict was solely in the domain of the trial court. *State v. Hawley,* 229 N.C. 167, 48 S.E. 2d 35.

The motion to set aside the verdict as being contrary to the evidence was addressed to the sound discretion of the trial judge, whose ruling is not reviewable on appeal in absence of manifest abuse of discretion. *Grant v. Artis,* 253 N.C. 226, 116 S.E. 2d 383. This record does not reveal error of law appearing on the face of the record so as to sustain defendant's exception to entry of judgment on the verdict. *Vance v. Hampton,* 256 N.C. 557, 124 S.E. 2d 527.

We have made a careful examination of the entire record and find no prejudicial error.

No error.